☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. 24-888M(NJ) |
| information associated with multiple accounts that are stored | ) |
| at premises owned, maintained, controlled, or operated by | ) |
| Apple Inc., a company headquartered at One Apple Park Way, | ) |
| Cupertino, California | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 7/15/2024 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    xx☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Nancy Joseph _____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____ 12/23/2024 _____.

Date and time issued: 7/1/2024 @ 2:27 p.m. _____

*Judge's signature*

City and state:    Milwaukee, WI _____    Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO

## FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the

United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this

certification is true and correct. I am employed by Apple Inc. ("Apple"), and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state that

the records attached hereto are true duplicates of the original records in the custody of Apple. The

attached records consist of _____ (pages/CDs/megabytes). I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the

matter set forth by, or from information transmitted by, a person with knowledge of those

matters, they were kept in the ordinary course of the regularly conducted business activity of

Apple, and they were made by Apple as a regular practice; and

b.    such records were generated by Apple's electronic process or system that produces an accurate

result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the

custody of Apple in a manner to ensure that they are true duplicates of the original records;

and

2.    the process or system is regularly verified by Apple, and at all times pertinent to the records

certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the

Federal Rules of Evidence.

_____    _____

Date                                Signature

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the below accounts that are stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

| USER | ICLOUD ACCOUNT EMAIL | ICLOUD ACCOUNT (DSID) |
|---|---|---|
| **Melvin R ALVARADO ORTIZ** | Melvinorttiiz@gmail.com | **25090345659** |
| **Melvin R ALVARADO ORTIZ** | melvinorttiizz1@gmail.com | **17865488147** |
| **Melvin R ALVARADO ORTIZ** | melvinalvarado2021@icloud.com | **20773696667** |
| **'Annayah Sophia' [Melvin R ALVARADO ORTIZ]** | annayah.sophia@icloud.com | **18252621870** |

# ATTACHMENT B

## Particular Things to be Seized

### I.    Information to be disclosed by Apple (Provider)

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserve, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A from 01/01/2021 to the present:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.      The contents of all emails associated with the account from 01/01/21 to present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the account 01/01/21 to present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and

query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.       All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.       All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txtfiles).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code, Section 922 (a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun or Handgun Ammunition to Juvenile Knowing Violent Crime Will be Committed], Section 924 (a)(1)(a) [False

Statements in FFL Application or to FFL], and Section 1961(1)(b) [Straw Purchasing and Firearms Trafficking], those violations involving Melvin R ALVARADO ORITZ and occurring after 01/01/21, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      Records containing the sale/purchase order of ammunition in a illegal format that is intended for the military/law enforcement that would not be for public use. Records can be contained in emails, text messages, SMS messages, iMessages, etc.

b.      Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

c.      Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

d.      The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

e.      The identity of the person(s) who communicated with the user ID about matters relating to the conspiracy and illegal importation of ammunition, including records that help reveal their whereabouts.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with multiple accounts that are stored at<br>premises owned, maintained, controlled, or operated by Apple Inc., a<br>company headquartered at One Apple Park Way, Cupertino, California | )<br>)<br>)<br>)   Case No.24-888M(NJ)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❑ contraband, fruits of crime, or other items illegally possessed;
- ❑ property designed for use, intended for use, or used in committing a crime;
- ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1) | Dealing in Firearms without a License |
| 18 U.S.C. § 922(d)(3) | Selling/Giving Firearms to an Unlawful Drug User |
| 18 U.S.C. § 1961(1)(b) | Straw Purchasing and Firearms Trafficking |

The application is based on these facts:

See attached Affidavit.

- ❑ Continued on the attached sheet.
- ☑ Delayed notice of _180_ days *(give exact ending date if more than 30 days:* _12/23/2024_ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Digitally signed by Alexis Krusic
DN: cn=Alexis Krusic, o=Bureau of ATF, ou=Milwaukee Field Office,
email=Alexis.Krusic@atf.gov, c=US
Date: 2024.06.25 15:12:44 -05'00'

Alexis Krusic, ATF Task Force Office

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date:7/1/2024

*Judge's signature*

City and state: Milwaukee, WI

Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

I, Alexis Krusic, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Task Force Officer (TFO) of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee IV Field Office. I am a Detective out of the Criminal Investigations Division with the Milwaukee County Sheriff's Office (MCSO) since 2020. I have been employed with MCSO since January of 2016 and a TFO since March of 2020.  My duties as a TFO with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses.

3.     I have completed approximately 920 hours/6 months of training at the Milwaukee

County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. I have read reports and worked with other officers/agents in complex investigations where I know that criminals put information on social media platforms to convey a message to groups of people and use their cellphones to communicate with individuals about the crime(s) they have committed to include before, during and after the incident.

4.      I have been part of MCSO's Bomb Squad Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices. I completed the Federal Bureau of Investigation's Hazardous Devices School, 5-week certification program, to become a certified bomb technician.

5.      I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice with a specialty in Crime Analysis in 2015.

6.      I have participated in firearm and drug trafficking investigations that involved the search of social media, and the seizure of computers, cellular phones, cameras, and other digital storage devices. The subsequent analysis of electronic data stored within these accounts or computers, cellular phones, cameras, and other digital storage devices, on many occasions, has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

7.      As a Task Force Officer, I have also participated in the investigation of narcotics-related offenses, which have included the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity. Through my training and experience, I have become aware

of the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

8.      I also know from training and experience that it is common for drug users, drug dealers, firearm traffickers, firearm possessors, and firearm straw purchasers to communicate by cellular phone through a variety of electronic media. The participants in these criminal organizations can use text (SMS) messaging, iMessage, phone calls, electronic mail, messaging applications, and various social media applications such as Facebook, Snapchat and Twitter to communicate about and organize criminal activity. Furthermore, based on my training and experience, I know that people who are prohibited from purchasing firearms (e.g., felons) will communicate with people who are authorized to purchase firearms by means of cellular telephone to coordinate the purchase of firearms. Lastly, I know that it is common for straw purchasers to conduct research or purchase firearms by visiting gun sales websites, including via their phones.

9.      I am personally involved in the investigation of the offenses discussed in this affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement officers (LEOs), including (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other LEOs about this and other investigations; (c) discussions I personally had concerning this investigation with other experienced investigators; (d) public records; (e) records obtained from law enforcement databases; (f) my training and experience as an ATF task force officer; and (g) the training and experience of other LEOs involved in this investigation.

10.     Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause to believe that the electronic devices described herein contain evidence relating to violations of Title 18, United States Code, Section 922 (a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun or Handgun Ammunition to Juvenile Knowing Violent Crime Will be Committed], Section 924 (a)(1)(a) [False Statements in FFL Application or to FFL], and Section 1961(1)(b) [Straw Purchasing and Firearms Trafficking] that have been committed by MELVIN R ALVARADO ORTIZ (M/H, 10/29/99) and other known and unknown subjects and that evidence of those violations is contained in the following iCloud accounts:

A.     Melvinorttiiz@gmail.com (iCloud Account: 25090345659)

B.     Melvinorttiizz1@gmail.com (iCloud Account: 17865488147)

C.     Melvinalvarado2021@icloud.com (iCloud Account: 20773696667)

D.     Annayah.sophia@icloud.com (iCloud Account: 18252621870)

which are linked to the owner, Melvin R ALVARADO ORTIZ. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11.     It is unlawful for anyone who is not a federal firearm licensee ("FFL") to engage in the business of dealing in firearms, or to ship, transport, or receive a firearm in interstate or foreign commerce. See Title 18 United States Code Section 921 et seq. In the Eastern District of Wisconsin, FFLs include commonly known retailers like Cabela's and Fleet Farm, and—of relevance here—Dunham's locations throughout Wisconsin.

12.     An FFL cannot lawfully transfer firearms to a non-FFL transferee/buyer (hereinafter "buyer") without requiring the buyer to complete ATF Form 4473, which must be kept in the FFL's records. See Title 18 United States Code Section 921 et seq. In addition, FFLs must contact the National Instant Criminal Background Check System ("NICS") to determine if a transfer can lawfully proceed. NICS background checks are conducted by a designated state or federal law enforcement agency, and query databases for arrests, convictions, and other disqualifying conditions as described below and in Title 18 United States Code Section 921 et seq. Of primary interest here, when a buyer wants to purchase a handgun from an FFL in Wisconsin, the FFL must initiate the NICS background check by contacting the Wisconsin Department of Justice's Handgun Hotline.

13.     To conduct a lawful NICS background check and firearm transfer from an FFL, the buyer must complete ATF Form 4473. Form 4473 requires the buyer to provide truthful, accurate, and material information regarding (but not limited to): (i) the buyer's name, residence, citizenship, and birthdate; (ii) whether the buyer is the actual buyer, rather than unlawfully acquiring the firearm for another person, commonly called "straw purchasing"; and (iii) whether the buyer is statutorily prohibited from possessing firearms because they are or have been a fugitive, under indictment, a convicted felon, a convicted domestic-violence misdemeanant, an

illegal alien, dishonorably discharged from the military, subject to a court order prohibiting firearm possession, adjudicated as mentally defective, committed to a mental institution, and/or an unlawful user of or addicted to any controlled substance

14. Form 4473 provides definitions and examples to distinguish between an actual buyer versus unlawfully acquiring a firearm for someone else/straw purchasing. Unlawfully acquiring for others includes doing so for money or value, rather than as a bona fide gift. The tactic of straw purchasing is used not only when the buyer is prohibited by law from possessing firearms (and therefore cannot pass a background check), but also by non-prohibited buyers who want to avoid detection and suspicion because they intend to engage in unlawful activity with a firearm, like dealing firearms without a license, using firearms to commit crimes, or trading firearms for drugs.

15. Each time a buyer completes Form 4473 in a firearm transaction with an FFL, the form expressly notifies the buyer that their signature means: they are certifying that all information they provided is true and correct; that they understand all questions, notices, instructions, and definitions on the form; that they know any false answer can be prosecuted under federal and state law; and that they are providing all information under penalty of perjury.

16. Some gun buyers and sellers use on-line platforms like "Armslist, LLC ("Armslist")" and "GunBroker, LLC ("GunBroker")" which serve as virtual marketplaces to arrange firearms transactions. However, the shipment and transfer of the firearm must be conducted in person through an FFL—like Guardian Guns in South Milwaukee, Wisconsin and Dunham's in Wisconsin [Franklin, West Allis, Delavan, New Berlin, Racine, and Brookfield]— in compliance with all laws in the buyer's state of residence.

17.     I am aware of an investigation into Melvin R ALVARADO ORTIZ (M/H, XX/XX/1996), who had purchased a large quantity of firearms that had multiple recoveries associated.

18.     ALVARADO ORTIZ had purchased 45 firearms between 06/20/2021 and 3/15/2024. As of June 3, 2024, **seventeen** (17) of ALVARADO ORTIZ's purchases between July 17, 2022, and March 15, 2024, have been recovered on different subjects in Milwaukee, Puerto Rico, New York and Illinois.

19.     The majority of firearm purchases by ALVARADO ORTIZ were paid for entirely in US currency from multiple FFL locations within Wisconsin. ALVARADO ORTIZ provided the following telephone numbers: (414)491-0030 from June 20, 2021, to August 4, 2023; (414)530-2768 from March 1, 2023, to July 7, 2023; (414)309-3225 on September 26, 2023; and (414)309-3229 on March 15, 2024, to acquire firearms.

20.     Case agents located nine FFL's that ALVARADO ORTIZ used to purchase the 45 firearms. The FFL's include Shorty's Shooting Supply in West Allis, Wisconsin (one firearm); EGun Direct (one firearm) in Butler, Wisconsin; Guardian Guns (three firearms) in South Milwaukee, Wisconsin; the following Dunham's locations: Franklin, Wisconsin (10 firearms); West Allis, Wisconsin (11 firearms); Delavan, Wisconsin (one firearm); New Berlin, Wisconsin (six firearms); Racine, Wisconsin (two firearms); Brookfield, Wisconsin (five firearms); and five unknown FFL's due to an offline NCIC search, showing that a firearm was purchased on a certain date, but not able to obtain the FFL.

21.     Eleven of the 45 firearms purchased by ALVARADO ORTIZ were recovered within a year of the purchase date in crime incidents. The remaining recoveries spanned from 386 days to 809 days). Based on my training and experience, this type of activity is consistent with

ALVARADO ORTIZ purchasing the firearms and engaging in the illegal reselling of the firearms.

22.     Affiant is aware that an ATF E-Trace form is completed to trace recovered firearms in crimes and records the purchaser of the firearm. On April 29, 2020, ALVARADO ORTIZ purchased a Smith & Wesson M&P 15-22 .22 caliber rifle with SN DFS6067 (with brass catcher attached) according to ATF E-Trace form T20220402598. On July 17, 2022, 809 days from the date of purchase, the M&P rifle was recovered in an incident in Washington County, Wisconsin. The incident involved a subject that was shooting in the backyard of a residence without a backstop and almost struck two kayakers in the distance.

23.     On August 19, 2021, ALVARADO ORTIZ purchased a Glock 19X with SN BSYC946 according to ATF E-Trace form T20220506552. On September 29, 2022, 406 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin. The incident involved a subject that actively resisted/obstructed officers and was charged with endanger safety by use of a dangerous weapon (refer to NIBIN section).

24.     On October 3, 2021, ALVARADO ORTIZ purchased a Glock 19 with SN BUAS727 according to ATF E-Trace form T20220598958. On November 17, 2022, 410 days from the date of purchase, the Glock was recovered in an incident in Puerto Rico. The incident involved ATF-Puerto Rico where information was received that a particular housing complex was the source of the area's narcotics and the subject involved in this recovery was an active subject within this business.

25.     On December 3, 2021, ALVARADO ORTIZ purchased a Glock 19 with SN BUPK716 according to ATF E-Trace form T20240104151. On February 24, 2024, 813 days from the date of purchase, the Glock was recovered in an incident in Buffalo, New York. The incident involved a subject (male born in 2004). Police responded to a large number of subjects fighting at

a party and officers observed the subject holding a firearm, refused officer commands and ran into the residence, returning outside without the firearm. A witness at the party showed officers a video of the subject firing the fully automatic Glock 19 and threatening underage subjects within the residence with the firearm.

26.     On January 21, 2022, ALVARADO ORTIZ purchased a Glock 27 with SN BVLH956 according to ATF E-Trace form T20220549628. On October 15, 2022, 267 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin. A dark blue BMW sedan was located by undercover officers that was wanted for a shooting incident on October 7, 2022. Officers observed narcotics inside of the vehicle. Officers obtained a residential search warrant and recovered large amounts of narcotics, firearms, drug packaging, a ski mask, and the Glock that fired fully automatic. The subject's cell phone had videos of 'cartel' activity per his messages. This firearm had 10 NIBIN incidents linked (refer to NIBIN section).

27.     On January 27, 2022, ALVARADO ORTIZ purchased a Glock 19 with SN BVHC623 according to ATF E-Trace form T20220387553. On August 5, 2022, 190 days from the date of purchase, the Glock was recovered in an incident in Puerto Rico via ATF.  In the incident, drug packaging materials, and drug paraphrenia were found. Pursuant to a state residential search warrant, the subject was on supervision for shooting at undercover officers who arrived on his drug point where he was selling marijuana and heroin. The subject told officers that he purchased the firearm two months prior for $1,000.00 for his protection and knew the firearm was illegal.

28.     On February 10, 2022, ALVARADO ORTIZ purchased a Glock 19X with SN AGBY835 according to ATF E-Trace form T20220199142. On April 6, 2022, 55 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin. The incident

involved maintaining a drug trafficking place and mobile drug dealing, and the investigation ended with the recovery of a large amount of narcotics (heroin, cocaine, fentanyl).

29.     On February 24, 2022, ALVARADO ORTIZ purchased a Glock 17 with SN BVBK769 according to ATF E-Trace form T20230274010. On March 17, 2022, 21 days from the date of purchase, the Glock was recovered in an incident in Chicago, Illinois.  The incident involved a subject operating a vehicle that had the firearm inside. A small amount of narcotics was located.

30.     Also on February 24, 2022, ALVARADO ORTIZ purchased a Glock 19 with SN BVHM492 according to ATF E-Trace form T20240110973. On August 30, 2023, 552 days from the date of purchase, the Glock was recovered in an incident in Chicago, Illinois.  The incident involved an armed robbery, unlawful possession of a firearm by a felon and manufacture, and delivery of crack.

31.     On September 10, 2022, ALVARADO ORTIZ purchased a Glock 17 with SN BWFF781 according to ATF E-Trace form T20230028022. On November 28,2022, 79 days from the date of purchase, the Glock was recovered in an incident in Chicago, Illinois.  In this incident, narcotics were located during a traffic stop. The subject was removed from the vehicle and when officers conducted a pat down, he fled on foot and was later apprehended with the Glock.

32.     On March 1, 2023, ALVARADO ORTIZ purchased a Glock 19 with SN BZBU956 according to ATF E-Trace form T20230215589. On April 27, 2023, 57 days from the date of purchase, the Glock was recovered in an incident in Franklin Park, Illinois along with narcotics during the search of a vehicle.

33.     On March 25, 2023, ALVARADO ORTIZ purchased a Glock 19Gen5 with SN BZSW916 according to ATF E-Trace form T20230489419. On August 17, 2023, 145 days from

the date of purchase, the Glock was recovered in a homicide in Chicago, Illinois. The incident involved a subject that was shot in a drive by shooting and died on the scene. The passenger in the parked vehicle with the subject was also shot in the head but survived. The firearm on the passenger had an E-Trace gang affiliation to the Latin Kings.

34.     Also on March 25, 2023, ALVARADO ORTIZ purchased a Glock 17 with SN BWFN745 according to ATF E-Trace form T20230272459. On May 29, 2023, 65 days from the date of purchase, the Glock was recovered in a homicide in Bellwood, Illinois. The incident involved a subject that was shot and died on the scene.

35.     On May 22, 2023, ALVARADO ORTIZ purchased a Glock 19 with SN BZMX439 according to ATF E-Trace form T20240210601. On April 22, 2024, 386 days from the date of purchase, the Glock was recovered in an incident in Kenosha, Wisconsin. In the incident, the subject was arrested for possession of a machine gun, felon in possession of a firearm PTAC, obstructing an officer, and possession of THC (2nd + offense). The Glock fired fully automatic. This firearm had NIBIN incidents (refer to NIBIN section).

36.     On June 14, 2023, ALVARADO ORTIZ purchased a Glock 19X with SN BZCL660 according to ATF E-Trace form T20230487692. On August 8, 2023, 55 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin. In the incident, a vehicle fled from police, and then the subjects fled on foot and were apprehended. Narcotics were located and the subject arrested for resisting/obstructing, possession of THC, possession of a firearm by an adjudicated delinquent, possession with intent-cocaine and possession with intent-fentanyl. This firearm had NIBIN incidents linked with one of those being a homicide (refer to NIBIN section).

37.     On August 4, 2023, ALVARADO ORTIZ purchased a Glock 19 with SN CAAB727 according to ATF E-Trace form T20230522976. On September 11, 2023, 38 days from the date of purchase, the Glock was recovered in an incident in Milwaukee, Wisconsin.  In this incident, the subject was arrested for operate/go armed with firearm while intoxicated, discharge firearm within 100 yards of a building, endanger safety by use of a dangerous weapon, and carry concealed weapon. Officers responded to this incident due to hearing shots fired in the area. The Glock had been modified to fire fully automatic. This firearm had NIBIN incidents linked (refer to NIBIN section).

38.     On March 15, 2024, ALVARADO ORTIZ purchased a Romarm/Cugir Mini Draco with SN 23PH-2414 according to ATF E-Trace form T20240225571. On April 22, 2024, 38 days from the date of purchase, the Mini Draco was recovered in an incident in Milwaukee, Wisconsin. The subject in this incident was arrested for possession of a machine gun, recklessly endangering safety x2, bail jumping, flee/elude officer, and carry concealed weapon.

39.     As mentioned in passing above, many of the firearms purchased by Ortiz and then recovered at crime scenes were then matched to additional crimes via NIBIN.  The National Integrated Ballistics Information Network, (hereinafter: NIBIN) is a law enforcement database where recovered firearms are test-fired and the unique markings they make onto casings are noted. This allows law enforcement to match recovered firearms to other crimes.

40.     In this case, six of the firearms purchased by Ortiz and recovered by law enforcement were NIBIN linked to approximately 17 additional shootings.  The NIBIN Incidents are as follows:

## Glock 27 .40 Caliber SN BVLH956

a.    February 4, 2022, 00:00- Gunshot detection at 2601 W Becher Street, Milwaukee, WI. [13] .40 caliber casings recovered.

b.    March 12, 2022, 00:00- Shots fired at 1519 S 20th Street, Milwaukee, WI. [13] .40 caliber casings recovered. Shots were fired into the occupied residence of a victim.

c.    June 25, 2022, 00:00- Shooting at occupied building/vehicle at 1222 S 17th Street, Milwaukee, WI.

d.    September 17, 2022, 00:00- Gunshot detection at 1938 S Congo Avenue, Milwaukee, WI. [10] .40 caliber casings recovered.

e.    September 17, 2022, 00:00- Gunshot detection at 1958 S 5th Place, Milwaukee, WI. [14] .40 caliber casings and [13] 9mm casings recovered.

f.    October 7, 2022, 00:00- Shots fired at 2068 S 15th Place, Milwaukee, WI. [15] .40 caliber casings fired at a subject in his occupied vehicle.

g.    October 8, 2022, 00:00- Gunshot Detection at 1120 N 35th Street, Milwaukee, WI. [9] .40 caliber casings recovered.

h.    October 8, 2022, 00:00- Gunshot detection at 1657 S 17th Street, Milwaukee, WI. [4] .40 caliber casings recovered from two different firearms.

i.    October 15, 2022, 00:00- Weapons Violation at 1938 S Congo Avenue, Milwaukee, WI. Located vehicle involved in a shooting. The firearm had an auto-sear on it. Also located in the vehicle was crack cocaine, cocaine powder, and fentanyl.

## Glock 19X 9mm SN BZCL660

a.    July 28, 2023, 00:00- Shots fired at 2222 S 12th Street, Milwaukee, WI. [53] 9mm casings recovered.

b.      July 28, 2023, 00:00- Gunshot detection at 1982 S 11th Street, Milwaukee, WI. [32] 9mm casings from 3 firearms recovered.

c.      August 5, 2023, 00:00-Homicide/Murder at 1518 S 15th Place, Milwaukee, WI. Double homicide scene. Unknown actor(s) discharged a firearm multiple times at both victims, where both victims suffered multiple gunshot wounds, causing their deaths. Nobody was taken into custody on this date for this incident.

d.      August 8, 2023, 00:00- Felon in Possession at 1000 W Greenfield Avenue, Milwaukee, WI. Officers conducted a stop on a homicide vehicle when it fled from officers (the vehicle wanted in the August 5, 2023, double homicide above). The vehicle came to a stop and the two subjects then fled on foot and were apprehended. Inside of the vehicle, officers located the Glock 19X and a black Glock 27 P80 .40 caliber from the vehicle with a large amount of narcotics.

Glock 19 9mm SN CAAB727

a.      September 10, 2023, 00:00- Gunshot detection at 2400 W Burnham Street, Milwaukee, WI. [6] 9mm casings recovered.

b.      September 10, 2023, 00:00- Gunshot detection at 1538 S Union Street, Milwaukee, WI. Officers heard shots being fired and stopped the vehicle they believed fired the shots.  Officers located the black Glock with an auto-sear. Officers recovered [11] 9mm casings in front of 2331 W Rogers Street, Milwaukee, WI.

Glock 19X 9mm SN BSYC946

a.      August 29, 2021-Shots Fired at 2257 S 29th Street, Milwaukee, WI.

b.      September 29, 2022-Gunshot Detection at 1946 S Congo Avenue, Milwaukee, WI. Arrest made of subjects who shot into the air, [6] 9mm casings recovered from the

street and [1] 9mm casing recovered from subject's pocket.

Glock 19 9mm SN BZMX439

a.     August 23, 2023-Endanger Safety by use of a Dangerous Weapon at 2962 N 12th
Street, Milwaukee, WI. Unknown subject discharged a firearm striking one
residence and two vehicles.

b.     October 1, 2023-Shots Fired at 8125 W Hampton Avenue in Milwaukee, WI.
Unknown subject discharged a firearm striking the victim multiple times.

c.     October 12, 2023-Shots Fired at 4578 N 29th Street, Milwaukee, WI. Officers
responded to a shotspotter alert and recovered [3] 9mm casings.

d.     October 18, 2023-Recklessly Endangering Safety at 1250 W Finn Place,
Milwaukee, WI. Unknown subject discharged a firearm into an occupied vehicle.
Victim was shot in their leg and rushed into surgery.

e.     April 24, 2024-illegal possession, firearm recovered on subject after traffic stop
turned into a fleeing vehicle. Two firearms recovered near two subjects after a foot
pursuit.

41.     During the investigation into ALVARADO ORTIZ, case agents were able to obtain
receipts from Dunham's, pursuant to a subpoena. The other FFLs did not have copies of the
receipts or the FFL is still unknown at this time.

42.     ALVARADO ORTIZ's known 40 firearm purchases totaled $20,720.01 (5
unknown FFL's not able to obtain records from at this time)

43.     Nineteen purchases were paid for in cash.

44.     Case agents observed that of the identified FFL firearm purchases by ALVARADO
ORTIZ, the following are the same model and caliber pistols, namely: Glock 19 (13 purchased);

Glock 19X (five purchased); Glock 17 (seven purchased); Glock 17Gen5 (two purchased); Glock 19Gen5 (three purchased); and Glock 43 (three purchased).

45.     Based on my training an experience, when someone—as ALVARADO ORTIZ did—acquires more than one firearm of same make, model, and caliber, and engages in numerous, frequent, and rapid buying and selling of these types of firearms, such activity is indicative of dealing firearms.

46.     Also, ALVARADO ORTIZ's activity is not consistent with occasional sales to enhance a private collection or as a hobby; the firearms at issue are not rare or unique; rather, they are commonplace and have characteristics allowing them to be sold at a profit to prohibited persons and/or those engaged in illicit activity.

47.     Case agents reviewed records from Wisconsin Department of Workforce Development for ALVARADO ORTIZ.

    a.     In 2021, ALVARADO ORTIZ's [14] known purchases totaled $8,759.65 (transactions with receipts)

    b.     In 2022, ALVARADO ORTIZ's [10] known purchases totaled $5,562.37 (transactions with receipts)

    c.     In 2023, ALVARADO ORTIZ's [10] known purchases totaled $5,963.78 (transactions with receipts)

    d.     In 2024, ALVARADO ORTIZ's [1] known purchase totaled $ 614.21 (transaction with receipt)

48.     ALVARADO ORTIZ had the following reported income:

    a.     In 2020: $9,041.25

    b.     In 2021: $3,120.00

c. In 2022: $1,661.00

d. In 2023: No Earnings

49. Case agents reviewed records from Cashapp via Block Inc. for ALVARADO ORTIZ, pursuant to a subpoena.

50. Case agents learned that ALVARADO ORTIZ had two accounts:

a. $MelvinOrttiiz with an email of melvinorttiz@gmail.com and phone numbers of 414-530-2768 and 414-309-3225

    I. Within this account, ALVARADO ORTIZ had transferred a total of $6,180.80 to three other financial accounts under his control.

b. $Melvinorttiz with a phone number of (414)491-0030

    I. Within this account, ALVARADO ORTIZ had transferred a total of $11,911.16 to three financial accounts under his control.

51. Apple provided the target iCloud accounts pursuant to a subpoena based on identifiers for ALVARADO ORTIZ submitted during this investigation.

52. In the 'Annayah Sophia' account, the account used one of ALVARADO ORTIZ's known phone numbers as well as a known address for ALVARADO ORTIZ linked to the account.

53. Through investigative databases, no subject with the name of 'Annayah Sophia' or its likeness existed at the provided address that is known for ALVARADO ORTIZ and the account was created April 23, 2023.

54. Because a review of historical toll records (pursuant to a subpoena) has shown ALVARADO ORTIZ uses multiple phone numbers, often overlapping in the time they're used, your affiant concludes the iCloud data being requested would be extremely beneficial to the investigation.

55.     As discussed in greater detail below, your affiant knows that iCloud users typically use the same iCloud account(s) from phone to phone to back-up their messages, photos, data, and other information.  Your affiant believes that the Target iCloud accounts is likely to contain among other evidence: messages, call logs and other connections between ALVARDO ORTIZ and individuals the firearms are purchased for or recovered from; photographs used to advertise or describe the firearms ALVARDO ORTIZ resold; attribution evidence connecting ALVARDO ORTIZ to the phones and iCloud accounts. In sum, based on the above information, your affiant concludes that ALVARDO ORTIZ is fraudulently buying and then reselling firearms based upon and that his target accounts are likely to contain evidence of that activity as described below.

56.     Affiant is aware that those who possess Apple devices often utilize Apple's iCloud services to back up and store their data in the event they need to recover information.  Further, affiant is aware that this stored data can include, but is not limited to, text messages, call records, location data, photographs and videos.

57.     Affiant believes the correspondence located within the Target iCloud accounts will additionally provide further evidence of violations Title 18, United States Code, Section 922 (a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun or Handgun Ammunition to Juvenile Knowing Violent Crime Will be Committed], Section 924 (a)(1)(a) [False Statements in FFL Application or to FFL], and Section 1961(1)(b) [Straw Purchasing and Firearms Trafficking].

## BACKGROUND CONCERNING APPLE

58.     In my training and experience I have learned, Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating

system, and desktop and laptop computers based on the Mac OS operating system.

Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a.　Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.　iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.　iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be

used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.    Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.    Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f.    Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.    App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.S

59.    Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The

Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

60. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status ¬of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

61. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

62. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

63. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging

service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

64.     Your affiant is aware that Melvin R ALVARADO ORITZ's iCloud accounts are likely to contain electronic information such as messages, call records, location data, photographs and videos.  The accounts Melvinorttiiz@gmail.com (25090345659), Melvinorttiizz1@gmail.com (17865488147),        Melvinalvarado2021@icloud.com        (20773696667),        and annayah.sohpia@icloud.com (18252621870) and the evidence therein would accordingly be extremely useful to the investigation.  In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

65.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

66.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs,

documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

67. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

68. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

69. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

70.     There is probable cause to believe that in the Apple iClouds account for Melvin R

ALVARADO ORITZ listed as Melvinorttiiz@gmail.com (25090345659),

Melvinorttiizz1@gmail.com (17865488147), Melvinalvarado2021@icloud.com (20773696667),

and annayah.sohpia@icloud.com (18252621870) as listed in the aforementioned paragraphs there

is evidence of violations of Title 18, United States Code, Section 922 (a)(1) [Dealing in Firearms

without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm

to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun or Handgun Ammunition to Juvenile

Knowing Violent Crime Will be Committed], Section 924 (a)(1)(a) [False Statements in FFL

Application or to FFL], and Section 1961(1)(b) [Straw Purchasing and Firearms Trafficking].

71.     That based upon Affiant's training and experience, Affiant knows that the

execution of a search warrant related to remotely stored accounts such as Apple and within email

accounts maintained by Apple such as "iCloud" usually results in items of personal documents

such as bills, bank statements, photographs, videos, and other items or documents which establish

the identities of persons in control of the media.

72.     That based upon Affiant's training and experience, Affiant knows that individuals

purchasing and selling firearms routinely keep emails, regarding the purchases and/or sales.

73.     That Affiant knows that it is common for firearms purchasers and possessors to

maintain electronic records, receipts, notes, ledgers, receipts relating to the transportation, ordering

and purchase of firearms and that such records are typically kept where the purchaser would have

ready access to them including Apple accounts.

74.     That Affiant knows that firearm possessors and traffickers often take or cause to be

taken photographs and other visual depictions of themselves, their associates, their property and

their firearms, and typically keep and maintain these photographs in their residences and other locations where they exercise dominion and control such as telephones, tablets, computers, other media storage devices and remote storage locations.

## TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## <u>REQUEST FOR SEALING</u>

I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the below accounts that are stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

| USER | ICLOUD ACCOUNT EMAIL | ICLOUD ACCOUNT (DSID) |
|---|---|---|
| **Melvin R ALVARADO ORTIZ** | Melvinorttiiz@gmail.com | **25090345659** |
| **Melvin R ALVARADO ORTIZ** | melvinorttiizz1@gmail.com | **17865488147** |
| **Melvin R ALVARADO ORTIZ** | melvinalvarado2021@icloud.com | **20773696667** |
| **'Annayah Sophia' [Melvin R ALVARADO ORTIZ]** | annayah.sophia@icloud.com | **18252621870** |

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Apple (Provider)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserve, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A from 01/01/2021 to the present:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.     The contents of all emails associated with the account from 01/01/21 to present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.     The contents of all instant messages associated with the account 01/01/21 to present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.     All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and

query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.      All records pertaining to the types of service used;

i.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txtfiles).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code, Section 922 (a)(1) [Dealing in Firearms without a License], (a)(6) [Lying and Buying Firearms], (d)(3) [Any Person Sells/Gives Firearm to Unlawful Drug User], (x)(1) [Unlawfully Sell Handgun or Handgun Ammunition to Juvenile Knowing Violent Crime Will be Committed], Section 924 (a)(1)(a) [False

Statements in FFL Application or to FFL], and Section 1961(1)(b) [Straw Purchasing and Firearms Trafficking], those violations involving Melvin R ALVARADO ORITZ and occurring after 01/01/21, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. Records containing the sale/purchase order of ammunition in a illegal format that is intended for the military/law enforcement that would not be for public use. Records can be contained in emails, text messages, SMS messages, iMessages, etc.

b. Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

c. Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

d. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

e. The identity of the person(s) who communicated with the user ID about matters relating to the conspiracy and illegal importation of ammunition, including records that help reveal their whereabouts.